UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| ANASTACIA SHAFER, On Behalf of Herself And All Others Similarly Situated, | ) ) ) ) | CIVIL ACTION NO. 3:13-cv-01684-N |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| DIGITAL GENERATION INC., NEIL NGUYEN, SCOTT K. GINSBURG, AND OMAR CHOUCAIR, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN FURTHER SUPPORT OF
ROBERT M. LOWINGER'S MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
AND IN OPPOSITION TO COMPETING MOTION OF ALI ALAVI**

## INTRODUCTION

For the reasons given below, of the two competing lead plaintiff movants,[1] Robert Lowinger is the only movant qualified to serve as lead plaintiff. Lowinger respectfully submits this memorandum in opposition to the competing motion to appoint lead plaintiff and approve lead counsel that is pending before this Court, and in further support of his motion for appointment as lead plaintiff and for approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") and The Bilek Law Firm, LLP ("Bilek Law") as lead and liaison counsel, respectively.

## PRELIMINARY STATEMENT

Lowinger should be appointed as lead plaintiff and his selection of lead counsel should be approved. Lowinger suffered a significant loss as a result of the alleged fraud at Digital Generation – over $52,000 – which constitutes the largest financial interest in this action of movants who satisfy the requirements of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 23(a)(3) and (4). Competing movant Alavi reports a larger loss but Alavi cannot satisfy the adequacy requirements of Rule 23 – and he must if he is to serve in a representative capacity as lead plaintiff – because his trading pattern in Digital Generation subjects him to unique defenses unlike those pertaining to other class members.

Although the PSLRA first looks to the various financial interests of lead plaintiff movants, financial interest is only the beginning of the analysis. Courts must also ensure that prospective lead plaintiffs satisfy Rule 23's typicality and adequacy requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). If a movant cannot satisfy the adequacy or typicality requirement, he cannot be appointed as lead plaintiff.

Here, Alavi is subject to Rule 23 impediments rendering him inadequate to serve as lead plaintiff. First, Alavi is subject to unique defenses because he consistently daytraded Digital

---

[1] A motion for appointment as lead plaintiff was also made by Ali Alavi.

Generation stock. Indeed, Alavi purchased 1,371,548 shares on 81 unique trading days and daytraded (bought and sold on the same day) 327,528 shares on 28 of those days. *See* Ford Decl. Ex. B. Thus, Alavi daytraded Digital Generation stock on 36% of his trading days. As discussed below, daytraders have very different motivations and reasons for investing than the average investor, subjecting them to defenses peculiar only to them and rendering them unfit to serve in a representative capacity as lead plaintiffs. Second, the sheer volume of Alavi's trades in Digital Generation further weakens his adequacy under Rule 23 – Alavi's transactions cover 24 single-spaced pages and he made as many as 55 transactions *in a single day*. Simply put, Alavi will be a sitting duck at the class certification stage, when Defendants will inevitably argue that he is inadequate to serve as class representative because he is subject to unique defenses as a result of his day trading and rapid-fire, high-volume trading. With a vulnerable lead plaintiff and class representative, the whole class will suffer – possibly irreparably.

Moreover, as discussed below, the issue is not whether the unique defenses to which Alavi is susceptible will be successful – the mere fact that he is vulnerable to such unique defenses militates against appointing him to serve in a representative capacity for other Digital Generation investors. *See infra* at 4-5.

With Alavi out of the running, Lowinger is the only other movant. Further, Lowinger suffered a large loss in connection with the alleged fraud and suffers from no Rule 23 impediments. Accordingly, Lowinger should be appointed as lead plaintiff and his choice of lead counsel approved.[2]

---

[2] Although Alavi's unique defenses render him inadequate to serve as lead plaintiff, at a bare minimum, the Court should appoint Lowinger as co-lead plaintiff to safeguard the class' interests. Indeed, a court recently did precisely that when faced with a daytrader lead plaintiff movant. *See infra* at 4.

<u>**ARGUMENT**</u>

I.    **ALAVI SHOULD NOT BE APPOINTED AS LEAD PLAINTIFF**
      <u>**BECAUSE HE IS SUBJECT TO FATAL RULE 23 IMPEDIMENTS**</u>

      A.    **Alavi Is Subject to Unique Defenses as a**
                **Result of His Voluminous and Unusual Trading**

The PSLRA requires that prospective lead plaintiffs satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  *Parker v. Hyperdynamics Corp.*, 4:12-CV-999, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013).  A proposed lead plaintiff cannot satisfy the adequacy requirement if he "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *In re BP*, *PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010).

Courts have rejected lead plaintiff movants who, like Alavi, have unusual trading patterns because they are subject to unique defenses under Rule 23.  *See*, *e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, C07-06140MPH, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (court rejected a prospective lead plaintiff that made voluminous trades, finding that the movant "may be subject to a unique defense regarding its reliance on publicly available information"); *Bang v. Acura Pharm., Inc.*, 10 C 5757, 2011 WL 91099, at *6 (N.D. Ill. Jan. 11, 2011) (atypical trading volume such as "unusually high-volume and high-frequency trading" "may be sufficient to rebut the presumption of lead plaintiff"); *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (rejecting as lead plaintiff day-trader who made as many as 80 transactions in a single day, finding that "[s]uch a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself"); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (noting that day traders often focus on technical price movements rather than price); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (rejecting as lead plaintiff "an atypical investor that engages in transactions far beyond the scope

of what a typical investor contemplates"); *cf. Reinschmidt v. Zillow, Inc.*, C12-2084-RSM, 2013 WL 1092129, at *4 (W.D. Wa. Mar. 14, 2013) (ordering supplemental briefing on whether appointing co-lead plaintiffs together with a day trading lead plaintiff movant would "insulate [the day trader]from possible unique defenses levied against him to the class's detriment").[3]

The term "day trading" means "the act of buying and selling a stock within the same day." http://www.investopedia.com/articles/trading/06/daytradingretail.asp. Day traders have very different motivations in buying and selling a stock than the average investor because they "seek to make profits by leveraging large amounts of capital to take advantage of small price movements in highly liquid stocks or indexes." *Id.* *See also* http://www.sec.gov/answers/daytrading.htm. ("Day traders rapidly buy and sell stocks throughout the day in the hope that their stocks will continue climbing or falling in value for the seconds to minutes they own the stock, allowing them to lock in quick profits").

Here, Alavi extensively daytraded, and made a gargantuan amount of trades in, Digital Generation stock. Indeed, Alavi daytraded 327,528 Digital Generation shares – daytrading on 28 of 81 days, or over a third (36%) of his trading days. *See* Ford Decl. Ex. B. The sheer volume of Alavi's Digital Generation trades also militates against his appointment as lead plaintiff. Alavi submitted 24 pages of single-spaced transactions in Digital Generation stock and he effected as many as 55 transactions in one trading day.[4] In sum, Alavi's trading pattern is anything but typical and he is indisputably subject to unique defenses under Rule 23. *See supra* at 3-4.

Critically, whether these unique defenses will be successful is irrelevant – their mere presence is enough to disqualify Alavi under Rule 23. In *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 136 n.7 (5th Cir. 2005), the Fifth Circuit noted that the "ultimate success of [a unique]

---

[3] The court ultimately did appoint co-lead plaintiffs. *See* Ex. A attached hereto (slip op. in *Reinschmidt v. Zillow, Inc.*, C12-2084-RSM (W.D. Wa. April 24, 2013)).

[4] *See id.* (On December 31, 2012, Alavi made 55 purchases and sales in Digital Generation stock).

defense" is not the issue; the issue is that "the presence of this characteristic peculiar to the named plaintiff does present a sufficient question of typicality to justify a district court's decision to deny class certification."  (Citation omitted).  *See also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) ("whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members"); *Beach v. Healthways, Inc.*, 3:08-0569, 2009 WL 3245393, at *5 (M.D. Tenn. Oct. 5, 2009); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 312 (E.D. Va. 2007) ("whether these [unique] defenses will be successful is of no matter").

## II.    LOWINGER SHOULD BE APPOINTED AS LEAD PLAINTIFF

Lowinger has rebutted Alavi's presumptive lead plaintiff status on the grounds of his radically atypical Digital Generation trading.  With Alavi disqualified, Lowinger is the only other lead plaintiff candidate.  Further, Lowinger suffered a large loss stemming from his Digital Generation investments and, unlike Alavi, suffers from no Rule 23 issues.  Accordingly, Lowinger should be appointed as lead plaintiff.

## CONCLUSION

For the foregoing reasons and those given in his opening brief, Lowinger respectfully requests that this Court: (1) appoint him as lead plaintiff for the class in this action and all subsequently-filed, related actions; and (2) approve his selection of Bernstein Liebhard and Bilek Law to represent the class as lead counsel and liaison counsel, respectively.

Dated:  July 22, 2013.

Respectfully submitted,

**THE BILEK LAW FIRM, L.L.P.**

*/s/ Thomas E. Bilek*

Thomas E. Bilek
State Bar No. 02313525
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720
(713) 227-9404 (facsimile)

**Proposed Liaison Counsel for Robert Lowinger
and the Class**

**BERNSTEIN LIEBHARD LLP**
Sandy A. Liebhard
Joseph R. Seidman, Jr.
10 East 40th Street, 22nd Floor
New York, NY  10016
(212) 779-1414
(212) 779-3218 (facsimile)

**Proposed Lead Counsel for Robert Lowinger
and the Proposed Class**